**BLANCHARD VALLEY FARMERS COOPERATIVE, INC., Appellee,**

v.

**CARL NIESE & SONS FARMS, INC., Appellant.**

[Cite as *Blanchard Valley Farmers Coop., Inc. v. Carl Niese
& Sons Farms, Inc.* (2001), 143 Ohio App.3d 795.]

Court of Appeals of Ohio,
Third District, Hancock County.

No. 5–2000–42.

Decided June 18, 2001.

*Robert Hollister,* for appellee.

*Benjamin F. Yale,* for appellant.

SHAW, Judge.

Defendant Carl Niese & Sons Farms, Inc. ("Niese Farms") appeals the November 15, 2000 order of the Common Pleas Court of Hancock County granting summary judgment to plaintiff Blanchard Valley Farmers Cooperative, Inc. ("BVFC").

BVFC is an Ohio corporation that operates a grain elevator located in Findlay, Ohio, and Niese Farms is a grain farming operation that conducts business in Leipsic, Ohio. Between November 25, 1994 and October 25, 1995, Niese Farms entered into a series of written agreements with BVFC denominated "purchase contracts," wherein Niese Farms apparently agreed to sell BVFC substantial amounts of grain. These agreements were structured as "hedge-to-arrive" or "flex hedge-to-arrive" contracts, which have been the subject of much litigation in this court and elsewhere. See, *e.g., Countrymark Coop., Inc. v. Smith* (1997), 124 Ohio App.3d 159, 705 N.E.2d 738; *Farmers Comm. Co. v. Burks* (1998), 130 Ohio App.3d 158, 719 N.E.2d 980. See, generally, Charles F. Reid, Note, Risky Business: HTAs, The Cash Forward Exclusion and *On Top of Iowa Cooperative v. Schewe* (1999), 44 Vill.L.Rev. 125 (describing controversy over HTA contracts resulting from 1995–1996 rise in grain market price and collecting cases). Each of the written agreements was addressed to Niese Farms and stated, "We hereby confirm purchase from you this date." The agreements next listed the quantity of grain being purchased from Niese Farms by BVFC, the grade of the grain, a formula for calculating the price to be paid, and the agreed time of delivery. The price was apparently to be determined by reference to the price for date-of-delivery grain futures as listed on the Chicago Board of Trade, and would subsequently be altered approximately one week prior to delivery by adding or subtracting a "basis" amount. According to industry convention, the basis accounts for local fluctuations in price is set by determining the difference between the local price and the commodity price as listed on the exchange of

Chicago Board of Trade. Cf. *Countrymark*, 124 Ohio App.3d at 165, 705 N.E.2d at 742. Most of the agreements contemplated three different possibilities regarding the basis and time of delivery: (1) Niese Farms was required to establish the basis prior to delivery, (2) BVFC would set the basis at the time of delivery, or (3) Niese Farms could elect to "roll," or defer delivery until a later date. However, several of the agreements also contained references to "calls," "puts," and indicated that a fee "will be added to contract price if [the call or put is] not exercised or to a new priced [contract] if exercised." Finally, each written agreement also contained the following paragraphs:

"The above confirms the terms of the contract between the seller and the buyer: the seller hereby sells and agrees to deliver and the buyer hereby purchases and agrees to receive in the amounts and on the terms and conditions stated above. * * *

"Unless otherwise specified, the total of the grain, less any charges will be paid on pricing and delivery.

"This purchase is made subject to the trade rules of the National Grain and Feed Association. We reserve the right to limit pricing subject to when the Chicago Board of Trade is open and trading. Seller certifies title to the grain being sold."

Because of an apparently unexpected rise in the market price of grain in 1995 and 1996, Niese Farms believed it could get a better price on the open market rather than under its agreements with BVFC and elected to roll delivery on each of the contracts several times. Cf. Reid, *supra*, at 125–128. Ultimately, it became apparent to BVFC that Niese Farms no longer possessed the amounts of grain it had agreed to deliver to BVFC. On September 4, 1996, BVFC forwarded a letter to Niese Farms regarding the agreements for delivery of wheat, and pursuant to R.C. 1302.67(A) requested assurance that Niese Farms intended to fulfill its obligations under the agreements and deliver the grain. Similar letters were sent regarding agreements for the delivery of soybeans and corn. Niese Farms did not deliver any grain, nor did it confirm that it intended to perform under the agreements. As a result, BVFC cancelled all of its contracts with Niese Farms.

As is common in HTA agreements between grain farmers and grain elevators, in connection with each of its written agreements with Niese Farms, BVFC had maintained grain future positions on the Chicago Board of Trade corresponding to the amounts of grain it had agreed to purchase from Niese Farms. Cf. Reid, *supra*, at 135–139. When it cancelled its delivery contracts with Niese Farms, BVFC was also forced to liquidate these positions on the exchange. It then submitted invoices to Niese Farms for the liquidated positions, which totaled in excess of $400,000. However, Niese Farms refused payment on the invoices. On

December 9, 1996, BVFC filed a complaint for arbitration against Niese Farms with the National Grain and Feed Association, but on December 24, 1996, Niese Farms refused to participate in arbitration.

On February 8, 1998, BFVC filed a complaint in the Hancock County Court of Common Pleas, alleging breach of contract and account, and also requested a declaration that the dispute was subject to compulsory arbitration. Niese Farms answered and alleged that the contract was illegal under the Commodity Exchange Act, Sections 1–22, Title 7, U.S. Code, and the regulations of the Commodity Futures Trading Commission.[1] Niese Farms also asserted that the clause allegedly invoking arbitration in the agreements was unenforceable.

On November 15, 2000, the trial court granted a motion for summary judgment filed by BVFC. Following this court's decision in *Countrymark Coop., Inc. v. Smith* (1997), 124 Ohio App.3d 159, 705 N.E.2d 738, the trial court held that the HTA agreements were valid "cash forward" contracts that did not violate the Commodity Exchange Act. The trial court also held that Niese Farms had consented to arbitration when it entered into the HTA agreements and ordered that BVFC's claims be referred to the National Grain and Feed Association for arbitration. Niese Farms now appeals, and asserts three assignments of error.[2]

"The trial court erred when it did not find off exchange contracts resulting from trading in agricultural commodity options illegal under the CEA and the regulations of the CFTC.

"The trial court erred when it held that grain contracts involving off exchange trading in grain futures were valid and enforceable contracts.

"The trial court erred when it held that Blanchard Valley was entitled to have the dispute arbitrated and did not waive arbitration."

■ As Niese Farms' three assigned errors raise similar issues, we will address them together. When reviewing the grant of a motion for summary judgment, appellate courts review the judgment independently and do not give deference to the trial court. *Schuch v. Rogers* (1996), 113 Ohio App.3d 718, 720, 681 N.E.2d 1388, 1389–1390. Accordingly, the appellate standard for summary judgment is the same as that of the trial court. *Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.* (1988), 42 Ohio App.3d 6, 8, 536 N.E.2d 411, 413–

---

1. Niese Farms also filed counterclaims, but pursuant to the trial court's entry of summary judgment on Count 3 of BVFC's complaint, judgments on those claims as well as BVFC's two remaining causes of action have been stayed pending arbitration.

2. Although the trial court's order does not dispose of all the claims in the case, it is final and appealable under R.C. 2711.02, which provides a special right of appeal where a case has been stayed pending arbitration.

414. In *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 686–687, 653 N.E.2d 1196, 1202, the Ohio Supreme Court held that summary judgment is proper "when, looking at the evidence as a whole, (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, construed most strongly in favor of the nonmoving party, that reasonable minds could only conclude in favor of the moving party." See, also, Civ.R. 56(C).

Initially, we must clarify the issues that are properly before this court. The trial court did not conclude that off-exchange "options" or "futures" were legal under the Commodity Exchange Act; rather, the court held that the contracts at issue in this case were not off-exchange "options" or "futures" contracts but were instead valid "cash forward" contracts for sales of grain. Accordingly, in its first assignment of error, Niese Farms asserts that the trial court erred by failing to conclude that the contracts at issue in this case are off-exchange "commodity options," which at the time of the agreements in this case were specifically forbidden under Section 6c(b), Title 7, U.S. Code, and Section 32.2, Title 17, C.F.R. Similarly, in its second assignment of error Niese Farms asserts that the trial court erred by failing to conclude that the contracts at issue are "commodity futures," which are required to be traded on a listed exchange under Section 6a(a), Title 7, U.S. Code. Finally, in its third assigned error, Niese Farms asserts that this dispute is not subject to arbitration and that even if it is subject to arbitration, BVFC waived its right to compel arbitration.

█ We will begin by addressing the second claim. Niese Farms contends that the agreements are illegal off-exchange futures contracts, based upon the fact that each of the agreements created a right to extend delivery for an indefinite period subject to the payment of a fee. However, based upon our decision in *Countrymark Coop., Inc. v. Smith* (1997), 124 Ohio App.3d 159, 705 N.E.2d 738, this contention is without merit. In *Countrymark*, we observed that "the mere right to extend delivery" does not change an otherwise valid "cash forward" grain sales contract into an off-exchange futures contract in violation of the Commodity Exchange Act. *Id.* at 167, 705 N.E.2d at 743–744. Rather we held that "the CEA prohibits off-exchange transactions for the delivery of commodities in the future when the parties never actually intend to deliver the commodity or have no capacity to do so." *Id.* Here, the terms of the agreements contemplate an actual delivery of grain, BVFC operated a grain elevator capable of taking delivery of grain from Niese Farms, and Niese Farms was aware that it was required to deliver grain to BVFC under the agreements. See Deposition of Gerald Niese at ** 16–17; *id.* at ** 48–49. Accordingly, while the wording and terms of the agreements at issue in this case differ from the contracts at issue in *Countrymark*, the rule of that case nevertheless controls the outcome of this

assignment of error. *Countrymark,* 124 Ohio App.3d at 167–168, 705 N.E.2d at 743–744.

 Next, Niese Farms asserts in its first assignment of error that the trial court should have found that the contracts were illegal off-exchange options contracts.[3] An "option" is defined as:

"A privilege existing in one person, for which he has paid money, which gives him the right to *buy* certain commodities or certain specified securities from another person, if he chooses, at any time within an agreed period, at a fixed price, or to *sell* such commodities or securities to such other person at an agreed price and time. If the option gives the choice of buying or not buying, it is denominated a 'call.' If it gives the choice of selling or not, it is called a 'put.' " Black's Law Dictionary (Abr. 6 Ed.1995) 755.

Niese Farms contends that several of the agreements were "puts" that allowed Niese Farms the option whether or not to sell grain according to the terms of the agreement, or alternatively to "roll" the contract to a later date. See Brief of Appellant at ** 3–4. It also argues that several other agreements were "calls" that allowed BVFC the option of whether to take delivery on grain from Niese Farms. *Id.* at * 3. In support of its contention that its agreements with BVFC were illegal off-exchange options contracts, Niese Farms cites *CoBank, ACB Corp. v. Alexander* (July 27, 1999), N.D. Ohio No. 3:96CV7687, unreported, in which the court held that certain HTA contracts constituted off-exchange options forbidden under Section 6c(b), Title 7, U.S. Code. That statute requires that all sales of commodities options comply with regulations issued by the Commodity Futures Trading Commission, and the regulations that were in effect at the time of the agreements in this case forbade the sales of off-exchange grain options entirely.

"No person shall offer to enter into, enter into or confirm the execution of, or maintain a position in, any transaction in interstate commerce involving wheat, * * * corn, [or] soybeans, * * * if the transaction is or is held out to be of the character of, or is commonly known to the trade as, an 'option', 'privilege', 'indemnity', 'bid', 'offer', 'put', 'call', 'advance guarantee', or 'decline guarantee'." Former 17 C.F.R. Section 32.2, Title 17, C.F.R. (1992).

---

**3.** BVFC asserts that Niese Farms did not raise this claim in the trial court; however, our review of the record reveals that Niese Farms asserted that the agreements at issue violated Section 6c(b), Title 7, U.S. Code, well prior to motions for summary judgment being filed in this case, and in fact asserted that the agreements were illegal under the statute in its amended counterclaim filed on April 17, 1998. See First Amended Counterclaim of Defendant at paragraph 28.

The *CoBank* court held that the specific HTA contracts at issue in that case were options forbidden under the statute and the regulation, and Niese Farms contends that at least some of the HTA contracts at issue in this case are similar. See *CoBank*, unreported, at * 18–19. We agree. Several of the contract documents attached to BFVC's complaint specifically identify the underlying transactions as "calls" or "puts," and rather than contemplating fixed obligations upon both parties, the transactions appear to be at least partially speculative in nature. See, *e.g.*, Complaint of Blanchard Valley Farmers Cooperative, Inc., at Exhibits A–2, A–3, B–1, A–6, B–5, cited in Brief of Appellant at ** 6–7 (identifying transactions).

■ A contract is an "option" if the optionholder has the right, but not the obligation, to compel performance by the other contract party "if he chooses." See Black's Law Dictionary at 755; cf. *CoBank*, unreported, at * 18–19. Here, the terms of at least some of the agreements at issue appeared to give option rights to Niese Farms, and others appeared to give option rights to BVFC. While other evidence in the record indicates that actual performance (by delivery of grain in exchange for payment) may have been required of both parties in each of the contracts at issue, we believe that there exists at the very least a dispute of material fact as to the type and therefore the legality of the transactions contemplated by the agreements. Cf. *Farmers Comm. Co. v. Burks* (1998), 130 Ohio App.3d 158, 171, 719 N.E.2d 980, 989–990 (where we held that "a question of fact does not exist as to whether the HTA contracts were in violation of the regulations established by the Commodity Futures Trading Commission or whether the HTA contracts constituted illegal trade options" as the record was "absent of any evidence" that the HTA contracts were options).

■ Finally, Niese Farms contends in its third assignment of error that it did not consent to arbitration when it entered into the agreements. As previously noted, each of the agreements provided that "[t]his purchase is made subject to the trade rules of the National Grain and Feed Association." Documents that are incorporated by reference into a contract are to be read as though they are restated in the contract. Cf. *Christe v. GMS Mgt. Co.* (1997), 124 Ohio App.3d 84, 88, 705 N.E.2d 691, 693 (holding that "[w]here one instrument incorporates another by reference, both must be read together"). See, also, *Gibbons–Grable Co. v. Gilbane Bldg. Co.* (1986), 34 Ohio App.3d 170, 173–175, 517 N.E.2d 559, 562–563 (holding that contract between parties incorporated arbitration clause of another contract by reference).

The relevant provision of the trade rules in effect at the time of the transactions stated that "[w]here *differences between members* of this Association cannot be amicably adjusted, said differences shall, at the request of either party, be submitted to the NGFA Arbitration committee." (Emphasis added.) National

Grain and Feed Association Grain Trade Rule 42(a), quoted in BVFC's Memorandum in Support of Motion for Summary Judgment at * 2. See, also, Brief of Appellee at * 21. BVFC is a member of the National Grain and Feed Association. See, *e.g.*, Affidavit of John Bender attached to Plaintiff's Motion for Summary Judgment at paragraph 5. Niese Farms, on the other hand, is not a member of the association. See, *e.g.*, Affidavit of Gerald Niese attached to Defendant's Motion for Summary Judgment at paragraph 3.

While Niese Farms admits that its agreements with BVFC incorporated the NGFA Trade Rules (including Trade Rule 42[a]) and also that National Grain and Feed Association arbitration committee is permitted to hear disputes between members and nonmembers, see, *e.g.*, Arbitration Rule 3(a)(2) of the National Grain and Feed Association, quoted in Brief of Appellee at * 22, it contends that the Trade Rules do not *require* disputes between members and non-members to be submitted to arbitration. We agree. Trade Rule 42(a) clearly contemplates compulsory arbitration only "between members" of the NGFA, and there is no other mention of arbitration in any of BVFC's agreements with Niese Farms. We note that NGFA Arbitration Rule 3(a)(2) provides a clear example of how non-members may consent to arbitration under the Act:

"If the contract in dispute between a member and a nonmember provides for *arbitration by the National Association* or under *Arbitration Rules,* the parties to the contract shall be deemed to have consented to arbitration under these Arbitration Rules." (Emphasis added.) *Id.,* quoted in Brief of Appellee at * 22. Here, it is undisputed that the agreements made no reference to the Arbitration Rules. Rather, each of the agreements merely stated, "This purchase is made subject to the trade rules of the National Grain and Feed Association." This language is clearly sufficient to incorporate the NGFA Trade Rules into the agreements. However, no provision of the Trade Rules requires that disputes between members and non-members be arbitrated, and Niese Farms did not become a "member" of the NGFA merely by entering into an agreement that was governed in part by its Trade Rules.

Therefore, we cannot say that Niese Farms consented to arbitration when it entered into the agreements with BVFC. But, see, *Hodge Bros., Inc. v. DeLong Co., Inc.* (W.D.Wis.1996), 942 F.Supp. 412, 416 (holding that parties consented to NGFA arbitration), criticized in Nicholas P. Iavarone, Arbitration, Expediency, and the Demise of Justice in District Courts: Another Side of the Hedge to Arrive Controversy (1998), 3 Drake J.Agric.L. 319, 359–362. Moreover, this conclusion renders it unnecessary for us to examine whether BVFC's actions in this lawsuit constituted a waiver of its asserted contractual right to compel arbitration, since no such right existed under the contract.

For all these reasons, we must conclude that the trial court erred by granting summary judgment to BVFC on its request for compulsory arbitration. Niese Farms' first and third assigned errors are sustained, its second assigned error is overruled, and the judgment of the Hancock County Court of Common Pleas is reversed and remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

WALTERS, P.J., and HADLEY, J., concur.