The FOUR HOWARDS, LTD., Appellee,

v.

J & F WENZ ROAD INVESTMENT, L.L.C., et al., Appellees;

Sav–On Carryout, L.L.C., et al., Appellants.

[Cite as *Four Howards, Ltd. v. J & F Wenz Rd. Invest., L.L.C.*, 179 Ohio App.3d 399, 2008-Ohio-6174.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–07–1200.

Decided Nov. 21, 2008.

400

Thomas J. Szyperski, for appellees J & F Wenz Road Investment, LLC, et al.

Khary Hanible, for appellee the Four Howards, Ltd.

Alan Kirshner, for appellants.

Osowik, Judge.

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, following a bench trial, in which the trial court granted specific performance to appellee, the Four Howards, Ltd., and denied a request for specific performance by appellants, Emad Swade and his business, Sav–On Carryout, L.L.C. ("Sav–On"), Mohamed Tawfik, and KSM Investments, Inc., in a case involving a contract to purchase land. On appeal, appellants set forth the following two assignments of error:

{¶ 2} "First Assignment of Error:

{¶ 3} "The trial court erred in granting plaintiff's request for specific performance.

{¶ 4} "Second Assignment of Error:

{¶ 5} "The trial court erred in denying appellant's request for specific performance."

{¶ 6} The undisputed, relevant facts are as follows. On October 18, 2000, Emad Swade agreed to purchase Sav–On, a combined gasoline station and carryout business located at 7 Wenz Road in Toledo, Ohio, from Wenz. Accordingly, Swade entered into a written "purchase agreement" with Wenz's owners, Emad Dahbor and Ali Abu–Haniyeh. The purchase agreement, which was not notarized or recorded, included the following provision:

{¶ 7} "[Wenz's] Limited Liability Company also extends to [Swade], an option to purchase said land and building located at 7 Wenz Road, Unit 7, Toledo, Ohio 43615 for the sum of Two Hundred Thousand and 00/100 Dollars ($200,000.00) with said option to be exercised within the first three (3) years of this Lease. [January 1, 2001 through December 31, 2003]. Thereafter, [Swade] shall be provided with a right of first refusal for the purchase of the land and building. This right of first refusal is granted to [Swade] so long as he is current on his rent payments and with all of the terms and conditions of the Lease. * * *"

{¶ 8} Originally, Sav–On sold gasoline supplied by Beck Oil Company ("Beck"). However, Swade's relationship with Beck became strained and, shortly thereafter, Beck stopped supplying the business with gasoline. In January 2003, Swade agreed to purchase gasoline from another supplier, American Petroleum. Habib "Herbie" Howard, a principal of both Four Howards and American Petroleum, promised to upgrade the condition of certain portions of the property by installing new gasoline dispensers, repairing the lighting and the canopy, installing a new lighted sign, bringing the underground storage tanks into regulatory compliance, pouring new concrete, and replacing the door to the building. In return, Four Howards asked for an option to purchase the property.

{¶ 9} On January 15, 2003, Swade, Howard, Dahbor, and Abu–Haniyeh executed an "Option to Purchase" that, among other things, granted Four Howards the right to purchase the property, so long as the offer was made between January 15, 2003, and January 5, 2005. The document was recorded on February 21, 2003. In addition, the following clause was signed and acknowledged by Swade and Abu–Haniyeh on January 15, 2003, and recorded on February 23, 2003:

{¶ 10} "10. *Subordination of Lessees' Option to Buy*

{¶ 11} "Emad Swade, Lessee, does hereby consent to subordinate his right to exercise his option under and by virtue of his Business Property Lease with Grantor herein, and will only have his option privilege to exercise in the event the Four Howards Ltd. fails to exercise their option under the foregoing Agreement." (Underlining sic.)

{¶ 12} On May 15, 2003, a "Business Property Lease" between Swade and Abu–Haniyeh was recorded. The lease stated that it was executed on January 1, 2003. Its terms were essentially the same as those stated in the unrecorded purchase agreement executed on October 18, 2000; however, the business property lease granted Swade an option to renew the lease for 15 years. "Additional Terms" included in the business property lease referred to Swade's option to purchase until December 31, 2003, and his first right of refusal after that date.

{¶ 13} Less than a year after Four Howards' option to purchase was executed, Swade terminated Sav–On's business relationship with American Petroleum. On January 9, 2004, a meeting took place between Herbie Howard, Swade, Dahbor, and Abu–Haniyeh, at which Herbie Howard presented a paper bearing a photocopy of a check, purportedly signed by Thomas Howard, in the amount of $195,000. Written in the memo line of the copied check was "purchase of 7 Wenz Road." Below the copied check was a handwritten notation: "This shall be honored at any bank after a phase 3 no further action report is provided by Selling [sic] to Buyer," and the initials "T.H."

{¶ 14} On January 14, 2004, Swade, Dahbor, and Abu–Haniyeh executed a "First Addendum" to the business property lease, in which they clarified that Swade's 15–year renewal option consisted of three five-year renewal periods, at increasing rental rates. In addition, the addendum modified the terms of Swade's option to purchase by removing the end date of December 31, 2003. The addendum separately stated that "Lessee shall be provided with a right of first refusal for the purchase of the land and building so long as the Lessee is current on its rent payments and with all other terms and conditions of the Lease."

{¶ 15} On February 17, 2004, Four Howards sent a letter to Dahbor, which stated that it was "ready and willing to exercise the option to purchase the

property known as 7 Wenz Road. * * *" In the letter, Dahbor was asked to furnish a commitment for title insurance "evidencing such marketable title in grantor to the property." On February 25, 2004, Four Howards filed the complaint herein against Wenz, Swade, and Sav–On, in which they asked the trial court to declare that Four Howards' option to purchase is superior to Swade's first right of refusal. In addition, Four Howards sought damages for expenses incurred in renovating the property and for attorney fees and court costs. Attached to the complaint were copies of Four Howards' option to purchase, the letter from Four Howards to Dahbor, dated February 17, 2004, and the business property lease between Sav–On and Wenz.

{¶ 16} On March 1, 2004, Sav–On's attorney, Brian Jones, sent a letter to Four Howards' attorney, Charles Stupsker, in which he stated that Sav–On was formally exercising its first right of refusal. Also on March 1, 2004, Swade assigned his interest in Sav–On to Mohamad Tawfik, president of KSM Investments, Inc. ("KSM"). Pursuant to the terms of the assignment, KSM was to manage the carryout business for five years and pay a monthly rental fee of $1,600. The assignment was subject to the written consent of Dahbor and Abu–Haniyeh.

{¶ 17} Wenz answered the complaint on March 8, 2004. On March 12, 2004, Jones sent Stupsker a second letter, in which he reiterated Swade's desire to exercise the first right of refusal to purchase the property. Sav–On answered the complaint on April 23, 2004. On May 23, 2005, with leave of court, Four Howards filed a first amended complaint, in which it made an additional demand for unpaid rent due under the assignment between KSM and Sav–On. Attached to the amended complaint, in addition to copies of previously filed exhibits, was a copy of a conditional loan commitment from Genoa Bank to Four Howards in the amount of $200,000.

{¶ 18} Wenz filed an answer to the amended complaint on August 12, 2005, and Sav–On filed an answer on August 24, 2005. On October 13, 2005, Sav–On asked for leave to file a counterclaim, which the trial court granted. That same day, Tawfik and KSM filed a motion to intervene, which was granted on November 8, 2005. On November 16, 2005, Tawfik and KSM filed an answer, counterclaim, and request for declaratory judgment, in which they asked the trial court to enforce Sav–On's first right of refusal and deny Four Howards' request for specific performance.

{¶ 19} On January 17, 2006, KSM and Tawfik filed a request to amend their counterclaim to include the assertion that as assignees of Sav–On, they are beneficiaries of Sav–On's fraud and contract claims against Four Howards. On March 20, 2006, Four Howards filed a motion for summary judgment, in which it argued that its option to purchase should "uncontestably" prevail over Swade's

first right of refusal. On April 14, 2006, Wenz filed a memorandum in opposition to summary judgment, in which it stated that Four Howards is not entitled to summary judgment, since it undoubtedly had notice of Sav–On's first right of refusal, yet failed to include a waiver of that provision in the option to purchase. On April 29, 2006, Four Howards filed a reply, in which it asserted that it has the right to specific performance, since Herbie Howard had no actual knowledge of Sav–On's first right of refusal at the time the option to purchase was drafted and executed by the parties.

{¶ 20} On July 21, 2006, the trial court issued an opinion and judgment entry, in which it found that a genuine issue of fact remained as to which party had the right to purchase the property. Accordingly, the trial court denied Four Howards' motion for summary judgment. In that same entry, KSM's request to amend the counterclaim was granted.

{¶ 21} On August 10, 2006, with leave of court, Four Howards filed a second amended complaint, which contained additional allegations of individual liability on the part of Swade, Dahbor, and Abu–Haniyeh. Joint answers were filed by Wenz, Dahbor, and Abu–Haniyeh on September 11, 2006, and by Sav–On and Swade on September 18, 2006.

{¶ 22} On October 2 through 6 and 16 through 20, 2006, a bench trial was held at which testimony was presented by Herbie Howard; Kenneth White, an attorney and chief executive officer of American First Title Agency; Abu–Haniyeh; and Dahbor.[1]

{¶ 23} Howard testified at trial that he did not know that Swade and Dahbor had a lease when he first proposed purchasing 7 Wenz Road. Howard stated that he later learned that Swade had a lease and an option to purchase; however, he was not told about Swade's first right of refusal. On cross-examination, Howard testified that when he presented the photocopied check on January 9, 2004, he intended to purchase the property. He further testified that Genoa Bank issued a commitment letter on February 17, 2004, in which the bank promised to loan Four Howards $200,000. However, the letter was not signed by Four Howards and returned by February 29, 2004, as required by the bank. Although the loan was eventually approved, the money was used to finance another project. Howard stated that Swade and Dahbor mentioned a lease on several occasions; however, Howard's repeated requests for a copy of the lease were not honored. Howard further stated that Four Howards secured the release of Swade's option to purchase for $1,000, in consideration for upgrading the location. Howard

---

1. In all, 15 witnesses were called to testify at trial; however, the record contains only the above-referenced excerpts of the testimony presented.

testified that after Swade assigned the lease to Tawfik, it became apparent that Tawfik did not want to purchase gas from American Petroleum.

{¶ 24} On redirect, Howard testified that Four Howards attempted to exercise the option to purchase to protect its investment. However, the sale was never completed because the sellers did not want to go through with the purchase. On re-cross, Howard testified that he tendered payment for the property on January 9, 2004; however, he admitted that the photocopied check did not constitute a tender of payment by "check, by draft, or [by] cash."

{¶ 25} White testified at the hearing that the purchase agreement between Swade, Dahbor, and Abu–Haniyeh amounted to a "lease with [an] option to purchase." White also testified that Four Howards had "inquiry notice" of Swade's first right of refusal because Herbie Howard knew there was a lease arrangement and because he was involved in the running of the business. Consequently, Four Howards would have a duty to inquire as to the terms of the lease. On cross-examination, White stated that paragraph 10 of the purchase agreement should have been sufficient to place Four Howards on notice of Swade's first right of refusal. White further stated that an option to purchase is not the equivalent of a first right of refusal.

{¶ 26} On redirect, White testified that even an unrecorded lease would affect the right of a third party purchaser who had notice, and that any purchasers with notice of an unrecorded right or option should demand to see the document. On re-cross, White stated that at minimum, Four Howards had an obligation to ask whether there were any options or encumbrances on the property, since it knew that Swade had a lease arrangement with Dahbor and Abu–Haniyeh. In conclusion, White testified that "a reasonably prudent man would not enter into a deal not having all the facts."

{¶ 27} Abu–Haniyeh testified at trial that he signed the option to purchase so that American Petroleum could supply gasoline to Sav–On and improve the property. Abu–Haniyeh stated that he was present at the meeting on January 9, 2004, where Herbie Howard presented a photocopied check to Swade. Abu–Haniyeh further stated that Dahbor told him "this check is just for a bluffing, just go along with it." On cross-examination, Abu–Haniyeh testified that he always understood that Swade had a first right of refusal. He stated that Four Howards attempted to exercise their option because Tawfik wanted to discontinue purchasing gasoline from American Petroleum after he took over Sav–On's lease in January 2004.

{¶ 28} Dahbor testified at trial that he told Herbie Howard about Swade's option to purchase the property. Dahbor further testified that he would have told Howard about the first right of refusal, but he thought that it was the same thing as the option to purchase. Dahbor stated that he did not refuse to sell the

property to Swade or Four Howards and that he was waiting for the court to decide who would purchase the property. Dahbor further stated that he did not know about the first right of refusal until the meeting on January 9, 2004, when Herbie Howard showed Swade the photocopied check. Dahbor thought the fake check was designed to intimidate Tawfik, who did not want to continue purchasing gasoline from American Petroleum. Dahbor testified that before the meeting took place, Herbie Howard told Dahbor: "I'm going to present a copy of a check for the building amount and this is just—go along with it. * * * It is going to be a bluff just to see how those guys are going to act. * * *"

{¶ 29} Dahbor stated that Tawfik closed the station and stopped selling gasoline in late 2004. Dahbor also stated that before signing the option to purchase, Herbie Howard refused to look at the unrecorded purchase agreement, because he wanted to see an actual lease between Swade and Wenz. On cross-examination, Dahbor testified that Herbie Howard promised to remodel, landscape, put in new gasoline dispensers, remodel the lighted canopy, repair the lot, and move the door of the carry out; however, most of the promises were not kept. He further testified that Herbie Howard was not concerned about the effect of any lease when he had his son, a law student, prepare the one-page option.

{¶ 30} On May 18, 2007, the trial court issued a decision and judgment entry in which it granted Four Howards' request for specific performance, ordered the sale of the property to Four Howards pursuant to the terms of the option to purchase, and awarded Four Howards $8,278.64 for lost rentals and $1,249 in permit fees expended for the renovation of 7 Wenz Road. The trial court denied Four Howards' claims for expenses relating to the upgrading of the property, attorney fees, alleged diminished property values, lost profits on gasoline sales, interest expenses, refund of the $1,000 consideration for the option to purchase, and punitive damages. That same day, the trial court supplemented its decision by issuing 15 findings of fact and 23 conclusions of law.

{¶ 31} The trial court's relevant findings of fact are:

{¶ 32} "3. On January 15, 2003, defendants Emad Dahbor and Ali Abu Haniyeh on behalf of the defendant J & F [Wenz] executed an 'Option to Purchase' for the 7 Wenz Rd. property in favor plaintiff The Four Howards, LTD.

{¶ 33} "4. On January 15, 2003, defendant Emad Swade also executed the Option to Purchase subordinating any and all purchase rights he had to purchase 7 Wenz Rd., Unit 7 to the Option to Purchase being granted to The Four Howards, Ltd.,

{¶ 34} " * * *

{¶ 35} "7. The Option to Purchase was properly notarized by attorney James Shemas on January 15, 2003.

{¶ 36} "8. The Option to Purchase was properly recorded on February 21, 2003.

{¶ 37} " * * *

{¶ 38} "11. As of the date of execution of the Option to Purchase, January 15, 2003, neither plaintiff The Four Howards, LTD nor any of its employees, affiliates or agents had either actual or constructive notice of any facts which would impair the priority of its right to purchase 7 Wenz Rd.

{¶ 39} "12. In reliance upon the protection of the investment afforded by Plaintiff's Option to Purchase, [Four Howards] caused its agents and affiliates to improve 7 Wenz Rd. and to remedy outstanding licensure and permit issues for the conduct of business at 7 Wenz Rd. * * *"

{¶ 40} The relevant conclusions of law are:

{¶ 41} "1. There was a binding, legal contract with consideration.

{¶ 42} "2. [Four Howards] tendered performance.

{¶ 43} " * * *

{¶ 44} "5. [Four Howards] has a valid, enforceable option to purchase.

{¶ 45} "6. The claimed right of first refusal is not now valid or enforceable.

{¶ 46} " * * *

{¶ 47} "8. [Four Howards] is entitled to a decree of specific performance.

{¶ 48} "9. [Four Howards] properly executed it Option to Purchase * * *

{¶ 49} " * * *

{¶ 50} "12. [Four Howards] properly exercised its Option to Purchase.

{¶ 51} "13. The purported Right of First Refusal granted to Defendant Emad Swade is subordinate to [Four Howards'] Option to Purchase as are the rights of Sav–On Carryout, LLC.

{¶ 52} " * * *

{¶ 53} "15. Defendant Emad Swade subordinated his option privilege under the Purchase Agreement * * * to [Four Howards'] Option to Purchase. * * *"

{¶ 54} In addition to the above conclusions of law, the trial court found that Four Howards was not entitled to damages for lost rentals, permit costs, diminution in value, negligent or intentional misrepresentation or fraudulent concealment, lost gasoline sales, increased interest rates, punitive damages,

attorney fees, or refund of the $1,000 paid as consideration for the option to purchase.

{¶ 55} Four Howards filed a timely notice of appeal on June 15, 2007. A notice of cross-appeal was filed by Swade, Sav–On, Tawfik, and KSM Investments on June 25, 2007. On September 7, 2007, Wenz, Dahbor and Abu–Haniyeh filed a motion to dismiss Four Howards' appeal for failure to timely file an appellate brief, which Swade and Sav–On opposed. The motion to dismiss was denied by this court on October 30, 2007; however, on February 28, 2008, we sua sponte dismissed Four Howards' appeal for continued failure to file an appellate brief. Four Howards filed a motion for reconsideration on March 5, 2008, which was denied on April 4, 2008.[2] Consequently, only the issues raised by Swade, Sav–On, Tawfik, and KSM Investments remain to be resolved by this court.

{¶ 56} In their second assignment of error, Swade, Sav–On, Tawfik, and KSM assert that the trial court erred by declaring that the subordination of Swade's option to purchase also extinguished his first right of refusal. In support, they argue that Swade did not subordinate his first right of refusal when he signed the addendum to Four Howards' option to purchase. Alternatively, they argue that Four Howards had notice of the contents of the business lease agreement, which contained the first right of refusal, when the option to purchase was executed.

{¶ 57} It is well settled that the trial court's decision to grant or deny declaratory relief will not be overturned on appeal absent a finding of abuse of discretion. *Englefield v. Corcoran*, 4th Dist. No. 06CA2906, 2007-Ohio-1807, 2007 WL 1162162, ¶ 11, citing *O'Donnell v. State*, 4th Dist. No. 05CA3022, 2006-Ohio-2696, 2006 WL 1479886, ¶ 8; *Arbor Health Care Co. v. Jackson* (1987), 39 Ohio App.3d 183, 185, 530 N.E.2d 928. An abuse of discretion connotes more than a mere error of law or judgment, instead requiring a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 58} It is undisputed in this case that the business lease gave Swade an option to purchase the property that originally extended until December 31, 2003, and a first right of refusal that became effective upon the expiration of Swade's option to purchase. It is further undisputed that Swade agreed to subordinate his option to Four Howards' option to purchase on January 15, 2003. The trial court found that the first right of refusal did not survive the subordination of Swade's option and that Four Howards did not have either actual or constructive notice "of any facts which would impair the priority of its right to purchase 7

---

**2.** The April 4, 2008 decision also stated: "Hereinafter, appellant/cross-appellee will be designated as appellee and appellees/cross-appellants will be designed as appellants."

Wenz Rd." Accordingly, the trial court concluded that Four Howards has a "valid, enforceable option to purchase." We disagree, for the following reasons.

{¶ 59} A purchase option is "a unilateral contract, binding one side without binding the other." *Bahner's Auto Parts v. Bahner* (July 23, 1998), 4th Dist. No. 97 CA 2538, 1998 WL 470494. The owner of property who grants a purchase option may not dispose of the property before the option expires or is otherwise terminated, while the party who owns the option to purchase is free to consider other property "during the period of the option without prejudice to, or waiver of, his or her right to exercise the option." Id. In contrast, a right of first refusal is a preemptive right that gives its holder the first opportunity to purchase property if, indeed, it is ever sold. It does not obligate the property owner to sell the item in the first place. *Stern v. Cleveland Browns Football Club* (Dec. 20, 1996), 11th Dist. No. 95–L–196, 1996 WL 761163. Accordingly, as a matter of law, Swade's option to purchase and his right of first refusal were separate contract rights under the terms of the business lease. The next question to be determined is whether Swade waived both of his rights by executing the subordination clause in favor of Four Howards.

{¶ 60} It is well established that "[t]he construction and interpretation of contracts is a matter of law to be determined by the court." *Minson v. Cook*, 9th Dist. No. 23972, 2008-Ohio-5231, 2008 WL 4493209, ¶ 9, citing *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph one of the syllabus. "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *United Farm Family Mut. Ins. Co. v. Pearce*, 3d Dist. No. 2–08–07, 2008-Ohio-5405, 2008 WL 4615795, ¶ 10, citing *Alexander v. Buckeye Pipe Line Co.*, paragraph two of the syllabus. In addition, "[t]he general rule of statutory interpretation for contracts is that ambiguities must be construed against the drafter of the agreement." *Holderman v. Huntington Leasing Co.* (1984), 19 Ohio App.3d 132, 134, 19 OBR 221, 483 N.E.2d 175, citing *Monnett v. Monnett* (1888), 46 Ohio St. 30, 34–35, 17 N.E. 659.

{¶ 61} The clause subordinating Swade's option to that of Four Howards, which was drafted by Herbie Howard's son, did not mention Swade's first right of refusal. Accordingly, the record contains no evidence that either party intended to extinguish the first right of refusal by executing the addendum to Four Howards' option to purchase. Accordingly, after construing the contract language in a manner most favorable to Swade, we find that the trial court erred by concluding that Swade's first right of refusal was extinguished along with his option to purchase the property.

{¶ 62} As to the remaining issue of notice, pursuant to R.C. 5301.25(A), an instrument affecting the title to land "is invalid as to a bona fide purchaser having 'no knowledge of the existence' of such instrument." *Schwieterman v. Feltz* (Dec. 22, 1986), 2d Dist No. 9964, 1986 WL 15307. However, even if a lease is unrecorded, a grantee need not know its specific terms in order "to be bound thereby so long as he knows of its existence." Id., citing *Riley v. Rochester* (1922), 105 Ohio St. 258, 136 N.E. 919.

{¶ 63} As set forth above, the trial court found that Four Howards had no notice, actual or constructive, of any superior right to purchase the property. Ordinarily, an appellate court gives due deference to the trial court's findings of fact, so long as they are supported by competent, credible evidence. *State v. Clements*, 5th Dist. No. 08 CA 31, 2008-Ohio-5549, 2008 WL 4694599, ¶ 11. However, reversible error may be found "where the legal conclusion arrived at is based solely upon a finding of fact which is contrary to the conceded and undisputed facts in the case." *Riley v. Rochester*, 105 Ohio St. 258, 136 N.E. 919, syllabus.

{¶ 64} The record shows that several witnesses presented undisputed testimony that Herbie Howard knew there was a lease between Swade and Wenz. Herbie Howard also testified at trial that he knew there was a lease, but said he did not actually ask to see it and, therefore, he was unaware of Swade's first right of refusal. Finally, White testified that any reasonably prudent purchaser in Howard's position would have demanded to see the business lease. Accordingly, we find that the trial court's finding that Four Howards did not have "either actual or constructive notice of any facts which would impair the priority of its right to purchase 7 Wenz Rd." is contrary to the undisputed evidence presented in this case.

{¶ 65} This court has reviewed the entire record that was before the trial court and, upon consideration thereof, finds that the trial court abused its discretion by declaring that Four Howards' option to purchase was superior to Swade's first right of refusal. The second assignment of error is well taken.

{¶ 66} In their first assignment of error, appellants assert that the trial court erred by declaring that Four Howards had the right to specific performance of the option to purchase. In support, they argue that the photocopied check presented by Four Howards did not constitute "tender" of the purchase price, which is an essential element of an action for specific performance.

{¶ 67} On appeal, the trial court's decision to grant specific performance will not be overturned absent a finding of abuse of discretion. *Sandusky Properties v. Aveni* (1984), 15 Ohio St.3d 273, 275, 15 OBR 408, 473 N.E.2d 798. As set forth above, an abuse of discretion connotes more than a mere error of law

or judgment, instead requiring a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140.

{¶ 68} The equitable remedy of specific performance is available "when the promisor's failure to perform constitutes a breach of the option contract, and a remedy for the breach which is ordinarily available at law, such as money damages, will not afford the promissee adequate relief for a loss arising from the breach." *Gehret v. Rismiller*, 2d Dist. No. 06CA1705, 2007-Ohio-1893, 2007 WL 1174464, ¶ 14. Generally, the party seeking specific performance must tender performance as a condition precedent. *Hegedus v. Rittman* (Dec. 30, 1982), 11th Dist. No. 1270, 1982 WL 5738. However, at the very least, in order to obtain specific performance of a contract, the party holding the option must show that he is willing, ready, and able to perform. *Graines v. Wald & Fisher, Inc.* (Mar. 31, 1988), 8th Dist. No. 53640, 1988 WL 36506, citing *Raudabaugh v. Hart* (1899), 61 Ohio St. 73, 88, 55 N.E. 214.

{¶ 69} In spite of evidence to the contrary, the trial court concluded that Four Howards "tendered" performance.[3] Nevertheless, this issue is irrelevant since, as set forth above, the trial court incorrectly determined that Swade's first right of refusal was not in effect at the time that Four Howards attempted to exercise its option to purchase.

{¶ 70} On consideration of the foregoing, this court finds that the trial court abused its discretion by awarding Four Howards the remedy of specific performance. The first assignment of error is well taken.

{¶ 71} The judgment of the Lucas County Court of Common Pleas is hereby reversed, and the case is remanded to the trial court for further proceedings consistent with this decision and judgment. Appellee, the Four Howards, Ltd., is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.

Judgment reversed.

PIETRYKOWSKI, P.J., and SINGER, J., concur.

---

3. The record shows that the "tender" offered by Herbie Howard on January 9, 2004, was a photocopy of a check in the amount of $195,000. Testimony was presented by Dahbor that Howard intended to use the photocopied check as a "bluff" to gauge Swade's and Tawfik's reactions. Howard himself testified that the photocopied check did not constitute "tender" by any conventional means. In any event, the actual check was never presented to Dahbor.