NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0625n.06

No. 16-3419

FILED
Nov 28, 2016
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FARMERS' ETHANOL LLC, )
)
    Plaintiff-Appellant, )
)
v. )
) ON APPEAL FROM THE UNITED
) STATES DISTRICT COURT FOR THE
BOUNTY MINERALS, LLC, ) SOUTHERN DISTRICT OF OHIO
)
    Defendant-Appellee. )
)
)

BEFORE:    DAUGHTREY, CLAY, and COOK, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. In this diversity action for breach of

contract, plaintiff Farmers' Ethanol LLC, appeals the district court's grant of judgment on the

pleadings to defendant Bounty Minerals, LLC. Farmers' Ethanol argues that letters of intent

executed by the parties comprise an enforceable agreement for Bounty Minerals's purchase of

certain oil and gas rights from Farmers' Ethanol. In the alternative, Farmers' Ethanol argues that

it is entitled to recover damages under a theory of promissory estoppel predicated on Bounty

Minerals's silence in the face of an alleged duty to speak. For the reasons discussed below, we

affirm the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

The complaint in this case alleged the following: After a period of negotiation, Farmers'

Ethanol and Bounty Minerals agreed to and signed letters of intent that discussed "proposed

transactions" in which Bounty Minerals would purchase oil and gas interests from Farmers'

Ethanol. Among other provisions, one of the letters of intent stated:

> After the execution of this letter of intent, Bounty shall have seven days to conduct a preliminary review of title and evaluate the Properties. During the initial review period, Farmers' shall provide Bounty copies of deeds and other title information and documentation regarding title to the Properties to Bounty. *If after the initial review period, Bounty wants to proceed with the acquisition of the oil and gas interest, Bounty shall prepare an oil and gas deed and order for payment in the forms attached . . . and present them to Farmers' for review and approval.*

The letters of intent also stated that "Bounty acknowledges that Farmers' may choose to satisfy

one or more liens or claims from proceeds of this transaction."

After the initial review period elapsed, Bounty Minerals did not prepare the deeds and

orders for payment. Approximately one month after the signing of the letters of intent, Bounty

Minerals told Farmers' Ethanol that a price reduction from what was reflected in the letters of

intent would induce it to purchase the oil and gas interests. Farmers' Ethanol declined to reduce

the price; subsequently, Bounty Minerals informed Farmers' Ethanol that an outstanding

$600,000 civil judgment and judgment lien against the real property prevented it from going

forward with the proposed transaction. In the following months, Bounty Minerals continued to

maintain that the civil judgment and lien were an impediment to closing.

Ultimately, Farmers' Ethanol informed Bounty Minerals that it would satisfy the

judgment (along with a $400,000 premium that the judgment creditor required in order to enter

an escrow agreement requested by Bounty Minerals). Without hearing back from Bounty

Minerals, Farmers' Ethanol then did so and subsequently sent electronic copies of documents

satisfying the judgment and releasing the lien, which Bounty Minerals agreed to forward to its

legal counsel for review.

A month or so later, Farmers' Ethanol contacted Bounty Minerals about the closing it anticipated would occur several weeks thereafter. Counsel for Bounty Minerals subsequently told Farmers' Ethanol that it did not believe that it was obligated to purchase the mineral interests and that no closing was planned.

Farmers' Ethanol initiated suit against Bounty Minerals in Ohio state court, alleging breach of contract and promissory estoppel (among other claims). With regard to the cause of action for breach of contract, Farmers' Ethanol alleged that the letters of intent constituted a binding contract for the sale of the oil and gas interests to Bounty Minerals. Farmers' Ethanol also alleged that Bounty Minerals's failure to give notice that it would not close the deal even if the judgment lien was satisfied estopped Bounty Minerals from "claiming that it ha[d] no obligation to perform its contracts." Bounty Minerals removed the case to federal district court and moved for judgment on the pleadings on all claims.

The district court granted Bounty Minerals's motion, finding that Farmers' Ethanol failed to state a claim for breach of contract because there was no binding agreement and that Farmers' Ethanol failed to state a claim for promissory estoppel by silence because it did not articulate any duty under which Bounty Minerals would be required to speak. Farmers' Ethanol now appeals.

**DISCUSSION**

**Standard of Review**

We review an entry of judgment on the pleadings under Federal Rule of Civil Procedure 12(c) using the same *de novo* standard of review that applies to a motion to dismiss for failure to state a claim. *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). All well-pleaded material allegations of the party opposing the motion must be taken as true; the motion may be granted only if the moving party nevertheless is entitled to judgment as a matter of law.

*Id.*; *see also Florida Power Corp. v. FirstEnergy Corp.*, 810 F.3d 996, 1000 (6th Cir. 2015). In order to survive a motion for judgment on the pleadings, a plaintiff's complaint must meet the plausibility standard announced by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). *See Tucker*, 539 F.3d at 550 (citing *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008)). Because this case is in federal court under diversity jurisdiction, Ohio substantive law applies.

**The "Initial Review Period" Clause**

Farmers' Ethanol argues that the letters of intent constitute a binding contract and that the "initial review period" clause was in fact a satisfaction clause requiring Bounty Minerals to fill out the deeds and purchase the oil and gas interests unless it was dissatisfied with the title or the properties. Farmers' Ethanol argues that Bounty Minerals breached this purported satisfaction clause because it refused to close the transaction in bad faith. We disagree.

> As we have noted in a previous opinion dealing with relevant state law:
>
> Under Ohio law, when confronted with an issue of contract interpretation, a court's role is to give effect to the intent of the parties. To that end, courts should examine the contract as a whole and presume that the intent of the parties is reflected in the language of the contract. . . . When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. *Courts may examine extrinsic evidence to ascertain the parties' intent only if the contract is ambiguous*.

*Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 361 (6th Cir. 2014) (internal quotation marks, alterations, and citations omitted) (emphasis added). A contract is ambiguous if it cannot be given a definite legal meaning or if the relevant provision "is susceptible of more than one reasonable interpretation." *Id.*

In this case, the plain language of the "initial review period" clause is unambiguous, and it unambiguously is *not* a satisfaction clause. Such clauses generally condition a party's

performance of its duty on its satisfaction with how the other party has performed. By contrast, the "initial review period" term in the letters of intent simply stated that Bounty Minerals was free to purchase the rights at issue "[i]f . . . [it] wants to," granting it unfettered discretion about whether to proceed with the sale.

In its brief on appeal, Farmers' Ethanol's discussion of why it believes the "initial review period" clause is a satisfaction clause rests on faulty reasoning:

> [T]he 'initial review period' term did [make one party's performance dependent upon the other party's performance]. Farmers obligation under the [letters of intent] to convey the Oil and Gas Rights to Bounty was dependent upon Bounty providing the completed deeds and orders for payment after the 'initial review period.' If Bounty was satisfied with the properties and manifested that satisfaction by presenting Farmers with completed deeds and orders for payment, then Farmers was obligated to execute the deeds to convey the Oil and Gas Rights to Bounty. Thus, Farmers performance was contingent upon Bounty's performance.

Farmers' Ethanol's explanation of why it believes a satisfaction clause exists makes clear that the obligation actually runs in the opposite direction in terms of what would be necessary to bind Bounty Minerals to perform. Leaving aside the fact that what Farmers' Ethanol has argued more closely resembles the fulfillment of a condition precedent (and not an obligation under a satisfaction clause), there is a clear *non-sequitur* in its reasoning. It is true that if Bounty Minerals were satisfied with the title work, it could choose to execute the deeds, but it was Farmers' Ethanol (not Bounty Minerals) that the language purports to bind. The fact that the "initial review period" clause appears after language requiring Farmers' Ethanol to provide "deeds and other title information and documentation regarding title to the Properties" does not limit the scope of Bounty Minerals's discretion or transform the provision into a satisfaction clause dependent upon the quality of Farmers' Ethanol's title.

A review of the language of the letters of intent makes clear that what they embody is merely an offer of sale. Had Bounty Minerals offered some consideration to Farmers' Ethanol for its promise to sell its rights at the rates specified in the letters of intent, the letters of intent could have formed an enforceable option contract. On their face, the letters of intent clearly reflect a promise by Farmers' Ethanol to sell the oil and gas interests to Bounty Minerals "[i]f after the initial review period, Bounty wants" to buy them. The non-circumvention clause in the letters of intent (requiring Farmers' Ethanol not to engage with other prospective buyers) further bolsters this interpretation. But there is no promise by Bounty Minerals to complete the purchase. Therefore, any agreement reached is, at most, a unilateral contract binding Farmers' Ethanol only.[1]

What is left, then, are letters of intent that embody an offer to sell, which Bounty Minerals could choose to accept or reject as it wished. In the letters, Bounty Minerals promised nothing except to prepare the deeds if it wished to consummate the transaction proposed; it thereby retained the ability to decide whether to purchase the oil and gas rights, and Farmers' Ethanol may not now force the sale or recover damages. *See Langley v. DaimlerChrysler Corp.*, 407 F. Supp. 2d 897, 917 (N.D. Ohio 2005), *aff'd*, 502 F.3d 475 (6th Cir. 2007) (observing that a contract is illusory when the promisor retains an unlimited right to determine the nature or extent of its performance; such an agreement may not be enforced or damages sought for its breach).

---

[1] "A contract is an 'option' if the optionholder has the right, but not the obligation, to compel performance by the other contract party 'if he chooses.'" *Blanchard Valley Farmers Coop., Inc. v. Carl Niese & Sons Farms, Inc.*, 758 N.E.2d 1238, 1243 (Ohio Ct. App. 2001). Hence, an option contract "bind[s] one side without binding the other." *Four Howards, Ltd. v. J & F Wenz Rd. Invest., L.L.C.*, 902 N.E.2d 63, 71 (Ohio Ct. App. 2008). If (as it appears from the record) Bounty Minerals did not give consideration for the option to purchase the oil and gas rights, Farmers' Ethanol would have been free to rescind the offer. Thus, the letters of intent may not form any enforceable agreement. *See Plikerd v. Mongeluzzo*, 596 N.E.2d 601, 606 (Ohio Ct. App. 1992).

Although it is true that courts should avoid an interpretation of a contract that would render its promises illusory, *Tackett v. M & G Polymers USA, LLC*, 811 F.3d 204, 208 (6th Cir. 2016), the language of the letters of intent in this case is clear and unambiguous:  Bounty Minerals was required to purchase the rights only if it chose to do so.  The letters of intent do not delimit the criteria on which a decision to purchase could be premised.  And, further, because the writings in this case are styled as letters of intent rather than as a contract, it is obviously less troubling to conclude that no enforceable contract was created.

## Intent to be Bound

Farmers' Ethanol contends that, even if the "initial review period" clause is not a satisfaction clause, the district court erred in granting judgment on the pleadings because whether the parties intended to be bound by the letters of intent is a question of fact for a jury.  Farmers' Ethanol's primary authority for this proposition is our decision in *Arnold Palmer Golf Co. v. Fuqua Industries, Inc.*, 541 F.2d 584 (6th Cir. 1976).

In *Arnold Palmer Golf*, which arose in the context of summary judgment, the parties executed a "memorandum of intent" that "serve[d] to confirm the general understanding" that the parties "ha[d] reached" regarding the acquisition of Arnold Palmer Golf stock by Fuqua Industries, in exchange for the acquisition of a Fuqua Industries subsidiary's stock by Arnold Palmer Golf and for management services by Fuqua Industries.  *Id.* at 586.  The memorandum "contained detailed statements concerning . . . the form of the combination, the manner in which the business would be conducted, the loans that Fuqua agreed to make to Palmer, and the warranties and covenants to be contained in the definitive agreement," among other things.  *Id.* The memorandum also included two provisions upon which the obligations of the parties would be conditioned: first, that the preparation of the definitive agreement would be satisfactory to

both parties and their counsel and, second, that the definitive agreement would be approved by the Fuqua Industries board of directors. *Id.* at 586–587. On appeal, we were asked to determine whether the parties intended to enter a binding agreement for the transaction itself when they executed the memorandum.

As we stated, "both parties must have a clear understanding of the terms of an agreement and an intention to be bound by its terms before an enforceable contract is created." *Id.* at 587. The question whether an enforceable contract is created "is merely one of expressed intention. If their expressions convince the court that they intended to be bound without a formal document, their contract is consummated, and the expected formal document will be nothing more than a memorial of that contract." *Id.* at 587–88 (quoting 1 Corbin on Contracts, §30 (1963). We noted, "At bottom, the question whether the parties intended a contract is a factual one, not a legal one, and, except in the clearest cases, the question is for the finder of fact to resolve." *Id.* at 588.

The holding in *Arnold Palmer Golf* does not affect the outcome of this case. First, the question for the finder of fact is the intent to be bound, not the interpretation of an agreement's language. As discussed above, the letters of intent in this case are unambiguous; even if there were an intent by the parties to be bound to the terms of the letters of intent, Bounty Minerals would be bound only to provide a deed to Farmers' Ethanol if it wanted to purchase the property. Because "[i]t is well established that the construction and interpretation of contracts is a matter of law to be determined by the court," *Four Howards, Ltd. v. J&F Wenz Rd. Invest., L.L.C.*, 902 N.E.2d 63, 72 (Ohio Ct. App. 2008) this case need not be remanded for consideration by a finder of fact. Second, given the illusory nature of the letters of intent, this case is one of those "clear[] cases" contemplated by *Arnold Palmer Golf* as being capable of resolution by the court.

Farmers' Ethanol also points to the ruling in *Arnold Palmer Golf* that, in order to determine whether the parties manifested an intention to be bound by the terms contained in a writing, "the entire document and relevant circumstances surrounding its adoption must be considered." *Id.* at 589. Farmers' Ethanol argues that this language requires the court to consider Bounty Minerals's behavior in suggesting an alternative price and then retreating from that suggestion as evidence that it believed it was bound by the letters of intent.

But that argument is equally unavailing. In *Arnold Palmer Golf*, the dispositive language in the memorandum—that "Fuqua *will* transfer" stock, that the "principal office of Palmer *will* be moved," and that "Fuqua *agrees* to advance" a payment, as well as the circulation of a press release by Fuqua Industries stating that the two companies "have agreed to cooperate in an enterprise" in the golfing industry—evinced an intent to be bound by its terms. *Id.*

The evidence in this case, on the other hand, shows that there was a "proposed" transaction, and the only potentially unqualified language in the letters of intent is that Bounty Minerals will execute a deed if it desires to do so. Moreover, with regard to Bounty Minerals's attempt to alter the price for the rights, Farmers' Ethanol's pleadings make it no less likely that Bounty Minerals, after choosing not to proceed with the proposed transaction contemplated in the letters of intent, sought to establish negotiations for a different, new sale of rights for a different price—well after the seven-day review period had elapsed.

**Promissory Estoppel**

Under Ohio law, a claim for promissory estoppel exists when a plaintiff has shown a clear and unambiguous promise; reliance upon that promise that is reasonable and foreseeable; and injury as a result of the reliance. *McCarthy v. Ameritech Pub., Inc.*, 763 F.3d 469, 486–87 (6th Cir. 2014). "The word 'promise' connotes some sort of commitment on the part of the

promisor." *Id.* at 487. A promise is "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." *Id.* (quoting *Dailey v. Craigmyle & Son Farms, LLC*, 894 N.E.2d 1301, 1307 (Ohio Ct. App. 2008)).

Farmers' Ethanol bases its claim on a theory that Bounty Minerals was silent in the face of a duty to speak. Specifically, Farmers' Ethanol claims that Bounty Minerals was obligated to notify Farmers' Ethanol that it would not close the proposed sale even if the judgment lien on the property was cleared. According to Farmers' Ethanol, that obligation arose from a duty to "negotiate in good faith."

Both parties focus their arguments concerning this cause of action on whether Bounty Minerals had a duty to speak. But there is fundamental problem with this theory of estoppel: Bounty Minerals's conduct must rise to the level of a promise to purchase the oil and gas rights if the judgment lien were satisfied. If its conduct does not amount to a promise, no promissory estoppel is available.[2]

Farmers' Ethanol's complaint alleges that "Bounty expressed concern that a $600,000 civil judgment and a corresponding judgment lien against Farmers's real property were obstacles to closing the transaction"; that "Bounty continued to repeatedly insist over the next two months that the Lien precluded it from closing the transaction"; that "Bounty continued to complain that the Lien was an obstacle to closing the transaction, and continued to cite the existence of the Lien to justify its refusal to complete its title work"; that Bounty Minerals said it "was prepared to 'walk away' from the deal if Farmers' Ethanol did not acquiesce to its demand that it be

---

[2] Farmers' Ethanol's claim seems closer to equitable estoppel than to promissory estoppel. However, equitable estoppel is only a defense, and not a cause of action, under Ohio law. *See Ford Motor Credit Co. v. Ryan*, 939 N.E.2d 891, 921 (Ohio Ct. App. 2010) (holding that a claim was for equitable estoppel rather than promissory estoppel because it involved a "misrepresentation, not a promise" and noting that "equitable estoppel is a defense to a legal or equitable claim, while promissory estoppel is a cause of action").

permitted to contact the judgment creditor"; that "Bounty . . . informed Farmers it would not commission the title work until the issue of the Lien was resolved" and "indicated" to Farmers' Ethanol that it should pay the lien; that Farmers' Ethanol informed Bounty Minerals it would satisfy the judgment in full—with no response from Bounty Minerals; and that Farmers' Ethanol notified Bounty Minerals once it had satisfied the judgment and stated that Farmers' Ethanol "look[ed] forward to the successful completion of your title work within sixty days."

But nowhere does Farmers' Ethanol allege that Bounty Minerals had promised to close the deal if the lien were satisfied. From the complaint it is evident that Bounty Minerals did not represent that the judgment and lien were the *exclusive* obstacles to closing the sale or promise to purchase the rights if the lien were satisfied. As a result, Bounty Minerals's silence when confronted with Farmers' Ethanol's statement that it would clear the judgment lien in this context does not create a promise to do so. Indeed, the complaint makes clear that title work had never been undertaken or completed.

Even taking all well-pleaded facts in Farmers' Ethanol's complaint as true, it is not plausible to conclude that Bounty had *promised* to complete the transaction if Farmers' Ethanol satisfied the lien, much less that such a promise was clear and unambiguous.[3] Regardless of whether Bounty Minerals had a duty to speak, the promissory-estoppel claim fails.

## CONCLUSION

For the reasons set out above, we find no reversible error and AFFIRM the judgment of the district court.

---

[3] A recent ruling by the Ohio Court of Appeals suggests that the promise may be one that the promisor "should reasonably expect to induce action or forbearance" and need not be "clear and unambiguous." *A N Bros. Corp. v. Total Quality Logistics, LLC*, 59 N.E.3d 758, 775 (Ohio App. 2016) (holding that the trial court's failure to require a jury to find alleged promises clear and unambiguous was not clear error because, despite court's consistent requirement of a clear and unambiguous promise, the Restatement as adopted by the Ohio Supreme Court did not include that language). Even under this standard, Farmers' Ethanol's claim fails.