[Cite as *Revocable Living Trust of Mandel v. Lake Erie Util. Co.*, 2016-Ohio-1396.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

Revocable Living Trust of
Stewart I. Mandel

      Appellee

v.

Lake Erie Utilities Co., et al.

      Appellants

Court of Appeals No. OT-15-010

Trial Court No. 20139003A

**DECISION AND JUDGMENT**

Decided: March 31, 2016

* * * * *

Kevin J. Zeiher and Orville E. Stifel, II, for appellee.

James C. Barney, for appellant Lake Erie Utilities Co.

David M. Buda, for appellant Burgundy Bay Association, Inc.

* * * * *

**PIETRYKOWSKI, J.**

**{¶ 1}** This is an appeal from judgments of the Ottawa County Court of Common Pleas, Probate Division, in a declaratory judgment action that was filed by plaintiff-appellee, the Revocable Living Trust of Stewart I. Mandel, against defendants-appellants, Lake Erie Utilities Co. and Burgundy Bay Association, Inc.

{¶ 2} The undisputed facts of this case are as follows. During his lifetime, Stewart I. Mandel purchased three contiguous parcels of land known as Lots 398, 399 and 400, in the Burgundy Bay subdivision on Middle Bass Island in Ottawa County, Ohio. A cottage sat on Lot 399 and the contiguous Lots 398 and 400 remained vacant. Appellant Burgundy Bay Association, Inc. ("BBA"), is a property owners association that maintains the roads and common areas within the subdivision. Appellant Lake Erie Utilities Co. ("LEU"), is a business that operates sewer and water facilities on Middle Bass Island and provides utility services to lots within the Burgundy Bay subdivision. All of the lots within the subdivision are subject to deed restrictions that are duly recorded in the records of Ottawa County. Those restrictions impose upon the owners of each lot, the obligation to pay certain fees to BBA and LEU on an annual basis for the operation and maintenance of water and sewer facilities owned by LEU and the roads, amenities and common areas owned by BBA.

{¶ 3} On October 7, 1991, Mandel signed a contiguous lot agreement ("the agreement") with BBA and LEU. The agreement was drafted by attorneys for BBA and LEU and was identical to contiguous lot agreements signed by numerous other property owners in the Burgundy Bay subdivision. The purpose of the agreement was set forth in the opening recital as follows:

WHEREAS, the BBA's Board of Trustees and LEU have determined that an owner of a vacant lot which is contiguous to Owner's lot upon which a residential structure is built (herein referred to as a

2.

"Residential Lot") should be exempt from BBA dues ("dues") and LEU availability for use charges ("charges") so long as both the Residential Lot and the Contiguous Lot are owned by Owner * * * and is vacant[.] The agreement then sets forth the following relevant provisions:

2. <u>WAIVER OF DUES AND FEES</u>

In consideration of Owner agreeing not to construct a residence upon the Contiguous Lot, BBA and LEU agree to waive their dues and charges including any special assessments which may be assessed against members of BBA or LEU otherwise chargeable to the Contiguous Lot or the Owner. By way of illustration, assessments for maintenance and repair of common areas are waived.

* * *

4. <u>CONSTRUCTION OF OTHER THAN ACCESSORY BUIILDING</u>

In the event Owner (i) construct a building on the Contiguous Lot which is not an extension or enlargement of the existing residence located on the Residential Lot; (ii) builds a garage or an out-building that is not an accessory structure to or compatible with the residence; or (iii) fails to comply with the Declarations of Restrictions or obtain, in advance, the required approvals of the BBAAC then this Agreement shall be void and

Owner shall pay to BBA and LEU dues and charges and interest as provided in paragraph 5.

5. PAYMENT OF FEES UPON BREACH OR TERMINATION

In the event that Owner becomes liable to BBA or LEU to pay for dues and charges waived herein, then Owner shall pay BBA and LEU an amount equal to the dues and charges which would have otherwise been payable to BBA and LEU but for the existence of this Agreement, plus interest at the rate of Ten Percent (10%) per annum, calculated from the date the dues and charges would have otherwise been payable. Owner shall also pay to BBA and LEU reasonable attorney's fees and expenses and costs incurred by either BBA or LEU in the enforcement of this Agreement.

6. TERMINATION

Owner may terminate this Agreement by notifying BBA and LEU in writing of Owner's intention to so terminate. In that event, Owner shall pay to BBA and LEU an amount equal to the dues and charges that would have otherwise been payable to BBA and LEU but for the existence of this Agreement, plus interest at the rate of Ten Percent (10%) per annum, calculated from the date the dues and charges would have otherwise been payable.

* * *

4.

10.  MISCELLANEOUS

\* \* \*

c.  <u>Binding Effect.</u>  This Agreement shall bind the parties hereto, their respective assigns, successors, receivers, and legal representatives of any type whatsoever, and shall not be modified unless done so in writing signed by the party sought to be bound by any such modification.

\* \* \*

i.  <u>Assignability.</u>  Owner's rights and obligations hereunder may not be assigned without the prior written consent of both BBA and LEU, the granting of which consent shall be in BBA's and LEU's sole and absolute discretion.

**{¶ 4}** In 1996, Stewart Mandel established an inter vivos trust, appellee the Revocable Living Trust of Stewart I. Mandel, with himself as trustee.  His siblings, Morris Mandel, Adley Mandel and Harriet Bloch, are the beneficiaries of that trust. Stewart Mandel then transferred Lots 398, 399 and 400 into the trust.  Stewart Mandel died in February 2010, and Morris Mandel is the successor trustee of the trust.  In August 2010, the trust entered into two separate agreements for the sale of the vacant contiguous lots, Lots 398 and 400.  Upon learning of these impending sales, BBA and LEU advised the broker and title company handling the transactions that transfer of the lots to the prospective purchasers would constitute a breach of the contiguous lot agreement and would render the trust retroactively liable for all dues, fees, charges and assessments

5.

previously waived on Lots 398 and 400 since 1991, along with interest on those sums at a rate of 10 percent per year.

{¶ 5} The trust initially filed a complaint for declaratory judgment in Stark County against BBA, LEU, the prospective purchasers of Lots 398 and 400, and the trust beneficiaries. That case was ultimately transferred to the court below. In Count 1 of its complaint, the trust prayed for declaratory judgment, pursuant to R.C. Chapter 2721, construing its rights and liabilities under the contiguous lot agreement. More specifically, Count 1 sought a determination as to whether the agreement is a waiver agreement or a deferral agreement. Further, Morris Mandel, as successor trustee, sought instructions from the court pursuant to R.C. 5802.02(C) as to his duties to the trust and its beneficiaries. In Count 2 of the complaint, the trust sought rescission of the sales contracts related to Lots 398 and 400, in the event the trial court determined that the agreement was a deferral agreement. During the proceedings below, however, the trust rescinded the sales agreements with the prospective purchasers of Lots 398 and 400.

{¶ 6} BBA and LEU both filed an answer and counterclaim which prayed for reasonable attorney fees, expenses and costs pursuant to the terms of the contiguous lot agreement. LEU asserted that it was entitled to fees pursuant to the agreement because of the pending sale of Lots 398 and 400. BBA claimed that it was entitled to fees under the agreement because the fees were being incurred in the enforcement of the agreement.

{¶ 7} On January 14, 2014, BBA filed a motion for summary judgment on the trust's complaint, as well as on BBA's counterclaim. On January 15, 2014, the trust filed

6.

a motion for summary judgment against BBA and LEU on its complaint and on the counterclaims. On October 30, 2014, the lower court filed a judgment entry which found that there was no genuine issue of material fact and that the trust was entitled to judgment as a matter of law. In reaching that determination, the court found that reasonable minds could only conclude that the contiguous lot agreement was a waiver agreement in that for so long as the owner or his successors possessed the residential lot and the contiguous lots, and there was no prohibited construction or written intent to terminate the agreement, dues and charges owed to BBA and LEU are waived or extinguished. The court further found that BBA and LEU failed to prove that there had been a breach or termination of the contiguous lot agreement that would require payment of retroactive dues, charges and interest and, as such, BBA and LEU were not entitled to an award of attorney fees under the terms of the agreement. Subsequently, on April 6, 2015, the lower court issued a further entry concluding all matters in the case and determining that there was no just reason for delay.

{¶ 8} BBA and LEU now appeal. BBA challenges the trial court's judgment through the following assignments of error:

> A. The probate court erred in finding that the subject agreement was not breached by appellee's predecessor in interest when he purported to assign the benefits of the agreement without the written approval of appellants.

7.

B.  The probate court erred in finding that the appellants had waived their right to receive payments mandated by deed restrictions after the breach of the agreement in 1996.

C.  The probate court, after finding that the terms of the subject contract raised issues of material fact as to the intent of the parties, then improperly resolved those issues.

{¶ 9} LEU further challenges the trial court's judgment as follows:

The probate court erred when it found no genuine issue of material fact existed when the Probate Court acknowledged that an ambiguity existed in the Contiguous Lot Agreement, but did not determine the parties' intent, as required by law.

{¶ 10} Because the assignments of error are related, they will be discussed together.  Trial court judgments granting motions for summary judgment are reviewed de novo; that is, an appellate court applies the same standard as the trial court in determining whether summary judgment should be granted.  *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).  Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law.  Civ.R. 56(C).

{¶ 11} Resolution of this case turns on meaning of the language in the contiguous lot agreement.  "In construing any written instrument, the primary and paramount

8.

objective is to ascertain the intent of the parties." *Aultman Hosp. Assn. v. Community Mut. Ins. Co.,* 46 Ohio St.3d 51, 53, 544 N.E.2d 920 (1989). "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 132, 509 N.E.2d 411 (1987). Common words appearing in the agreement "are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 245-246, 374 N.E.2d 146 (1978). If the terms are clear and unambiguous, the court cannot interpret the contract in a manner inconsistent with the intent of the parties as expressed by their clear language. *Id.* at 246. Contractual language is ambiguous only when its meaning cannot be derived from the four corners of the agreement, or when the language is susceptible of two or more reasonable interpretations. *Wolf v. Miller Diversified Consulting, L.L.C.,* 6th Dist. Wood No. WD-07-049, 2008-Ohio-1233, ¶ 24. Finally, it is well-established that ambiguities in a contract must be construed against the drafter of the agreement. *Four Howards, Ltd. v. J & F Wenz Road Investment, L.L.C.*, 179 Ohio App.3d 399, 2008-Ohio-6174, 902 N.E.2d 63, ¶ 60 (6th Dist.).

{¶ 12} The dispute in this case centers on the terms used in the contiguous lot agreement and the actions, under that agreement, which trigger the penalty provisions.

{¶ 13} Appellants contend that the agreement provides that the fees and costs due appellants under the deed restrictions were deferred so long as Stewart Mandel owned the

9.

lots contiguous to his residential lot and those contiguous lots remained vacant. They assert that Mandel breached the agreement in 1996 when he transferred his interest in the properties to his trust without the approval of appellants and that appellee's entering into contracts for the sale of the contiguous lots triggered the penalty provisions of the agreement.

{¶ 14} Appellee asserts that in transferring the lots to his own revocable trust, Stewart Mandel remained the titled, legal owner of the properties until his death and did not assign to another his rights and obligations under the contiguous lot agreement and, therefore, did not breach the agreement. Appellee further contends that there is no language within the four corners of the agreement that triggers the penalty provision if the owner dies or transfers (by sale or otherwise) the contiguous lots to a third party. On the issue of waiver, appellee asserts that the term is universally meant to denote the irrevocable surrender of a right or privilege. Finally, appellee contends that because neither of the two events that would trigger the penalty provision of the agreement (construction of other than an accessory building and the owner's written intent to terminate the agreement), have occurred in this case, it is not liable to appellants for retroactive dues, charges and assessments.

{¶ 15} As stated above, paragraph 2 of the contiguous lot agreement sets forth the key provision of the parties' agreement. Under that provision, appellants agreed "to waive their dues and charges" in consideration of "Owner agreeing not to construct a residence upon the Contiguous Lot[.]" The term "waiver" is not defined by the

10.

agreement. As noted by the trial court, "[a] waiver is an intentional relinquishment of a known right." *State v. Blackburn*, 118 Ohio St.3d 163, 2008-Ohio-1823, 887 N.E.2d 319, ¶ 17. Appellants assert that the agreement refers to a deferral of the fees and that regardless of whether the contract used the word "waiver," the intent of the parties to the agreement is clear: that appellants are entitled to the previously waived fees upon a breach or termination of the agreement. We disagree with appellants' assertion and find the opening recital in the agreement instructive on the issue.

{¶ 16} That recital states that the owner of a vacant lot that is contiguous to the owner's residential lot should be "exempt" from BBA dues and LEU charges "so long as both the Residential Lot and the Contiguous Lot are owned by Owner * * * and [the Contiguous Lot] is vacant[.]" In our view, the use of the words "exempt" and "so long as" make it clear that the "waiver" was ongoing so long as the residential and contiguous lots were owned by Stewart Mandel and the contiguous lots remained vacant. That was the case up until Mandel's death. It is unclear from the record who currently holds the title to the property. Regardless, the question before the lower court and this court is whether, under the terms of the contiguous lot agreement, appellee is liable to appellants for retroactive dues and fees. It is not.

{¶ 17} The agreement provides only two instances in which Mandel, or his successors, was to be liable for the payment of past dues and charges: if he constructed a building other than an accessory building on the contiguous lot or if he provided written notice to appellants of his intention to terminate the agreement. He did neither.

11.

Moreover, there is nothing in the agreement that would require the payment of past dues and charges upon the sale or transfer of the contiguous lots.

{¶ 18} Accordingly, the undisputed facts before this court have provided no instance in which appellee was liable to appellants for past dues and charges. The lower court did not err in granting appellee summary judgment and concluding that the contiguous lot agreement provided a waiver of the past dues and charges at issue. The assignments of error are not well-taken.

{¶ 19} On consideration whereof, the court finds that substantial justice has been done the parties complaining, and the judgments of the Ottawa County Court of Common Pleas, Probate Division, are affirmed. Appellants are ordered to pay the costs of this appeal in equal shares pursuant to App.R. 24.

Judgments affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.       _____

                                               JUDGE

Thomas J. Osowik, J.

                                      _____

James D. Jensen, P.J.                           JUDGE
CONCUR.

                                      _____

                                               JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.