[Cite as *Drone Consultants, L.L.C. v. Armstrong*, 2016-Ohio-3222.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| DRONE CONSULTANTS, LLC, | : | CASE NOS. CA2015-11-107 |
| Plaintiff-Appellant/Cross-Appellees, | : | CA2015-11-108 |
|  | : | O P I N I O N |
| - vs - |  | 5/31/2016 |
|  | : |  |
| SUSAN ARMSTRONG, et al., | : |  |
| Defendant-Appellees/Cross-Appellants. | : |  |

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 14 CV 86493

Daniel J. Picard, 110 Old Street, Monroe, Ohio 45050, for appellant/cross-appellee, Drone Consultants, Inc., and Barbara and Allen Drone, third party defendants

Elizabeth S. Loring, 9545 Kenwood Road, Suite 301, Cincinnati, Ohio 45242, for appellees/cross-appellants, Susan Armstrong, Darlene Cassidy, Carolyn Disney, Elisa Duron, Brenda England, and Vickie Pruitt

        **RINGLAND, J.**

        {¶ 1}   Plaintiff-appellant, Drone Consultants, LLC, appeals the decision of the Warren County Court of Common Pleas, granting summary judgment in favor of defendants-appellees, six former employees.  In addition, the former employees cross-appeal from a decision granting summary judgment in favor of Drone on claims for defamation and unlawful restraint of trade.  For the reasons detailed below, we affirm.

**{¶ 2}** Drone Consultants is a temporary staffing agency owned by Barbara and Allan Drone that supplies temporary employees to companies. Procter & Gamble is a principal client of Drone. As a corporate strategic decision, Procter & Gamble determined that it would no longer contract directly with staffing agencies, but would instead obtain temporary employees pursuant to a Channel Program Supplier Agreement ("CPS Agreement"). Volt Information Services served as a Channel Program Supplier for Procter & Gamble. As Drone was not designated as a Channel Program Supplier, it could not directly supply workers to Procter & Gamble, but instead would be required to contract through an intermediary, such as Volt.

**{¶ 3}** As a result of this policy, Drone entered into a CPS Agreement with Volt, which permitted Drone to provide employees to Procter & Gamble. Drone's CPS Agreement with Volt permitted it to terminate the agreement without cause upon 30 days' notice. The CPS Agreement also provided:

> In the event the Agreement is terminated at [Drone's] initiative, other than for a material breach by [Volt or Procter & Gamble] which remains uncured after the expiration of a reasonable cure period, [Drone] agrees that any restrictions regarding [Procter & Gamble's] employment of Contingent Workers furnished to [Procter & Gamble] during the term of this Agreement will be waived. [Drone] will release, effective on the termination, any limitation on Contingent Worker's subsequent employment in any manner by [Procter & Gamble].

**{¶ 4}** In 2013, Procter & Gamble issued a purchase order to Volt to provide services for its Mason Business Center. Drone provided the six employees to serve as corporate administrators pursuant to the terms of the purchase order. The six employees who Drone provided to Procter & Gamble through Volt each signed employment agreements with Drone. As relevant here, those employment agreements contained limitation provisions, which stated:

> If, for any reason, the employee decides to vacate said

temporary position, a two (2) week written notice is to be given to Drone Consultants LLC in order for Drone Consultants LLC to recruit and train a replacement employee for said position. The employee vacating the position agrees that he/she will not return to said position through any other contracting company.

{¶ 5} On May 27, 2014, Drone's attorney sent a letter to Volt giving notice of its termination of the CPS Agreement effective July 1, 2014 pursuant to the "without cause" provision in the agreement. Drone also advised Procter & Gamble of the termination of the CPS Agreement. Because of its corporate policy, Procter & Gamble would not directly contract with Drone for the services of the six employees, and that policy was reaffirmed to Drone on June 4, 2014, June 10, 2014, and June 17, 2014. As a result, Procter & Gamble chose not to renew the purchase order for the six employees. In a letter to Procter & Gamble confirming his understanding, Allan Drone wrote "[s]ince our people cannot remain in these positions, I will be notifying them today that their last day will be June 30." Thereafter, Allan notified the six employees that the purchase order would not be renewed and they would no longer be employed after June 30, 2014.

{¶ 6} On June 19, 2014, Drone emailed the six employees stating that June 27 was their last day at Procter & Gamble, as it was the final Friday before the purchase order expired. The six employees were separately informed that Drone had no other positions for them at the time and they may seek unemployment benefits because they could not remain in their positions at Procter & Gamble.

{¶ 7} To fill the soon-to-be vacant corporate administrator positions at Procter & Gamble, Volt contracted with On-Line Design, another temporary staffing company, and entered an agreement to provide six temporary employees. The six employees associated with Drone were interviewed by On-Line Design and subsequently hired to staff the same positions under the terms of the new purchase order to take effect on July 1, 2014. On June 18, 2014, the six employees each signed a "Confidential Agreement" as an employee of On-

Line Design. The six employees remained in their association with Drone and in their temporary positions at Procter & Gamble until they could no longer continue those positions as employees of Drone. On July 1, 2014, following the expiration of the original purchase order, the six employees commenced work as employees of On-Line Design in the same positions at Procter & Gamble that they held as employees of Drone.

{¶ 8} On September 17, 2014, Drone emailed all of its current employees and advised them that the six employees had left Drone and joined a competitor without providing Drone with the two-week notice required by their employment contracts. The email stated that Drone was consulting with its attorney regarding what the six employees "owed" Drone due to their breach of contract and warned their current employees of possible consequences for breach of contract.

{¶ 9} Drone sued the six employees for breach of contract. The six employees answered and counterclaimed for defamation and unfair competition. All parties moved for summary judgment. Ultimately, the trial court granted summary judgment in favor of the six employees in the breach of contract action. In addition, the trial court granted summary judgment in favor of Drone on the employees' claims for defamation and unfair competition. Drone Consultants now appeals the decision of the trial court, raising one assignment of error for review, and the employees' cross-appeal, raising two assignments of error for review.

{¶ 10} Assignment of Error No. 1:

{¶ 11} THE TRIAL COURT ERRED BY GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT.

{¶ 12} In its first assignment of error, Drone alleges the trial court erred by granting summary judgment in favor of the former employees in the breach of contract action. We find no merit to Drone's argument.

{¶ 13} This court reviews summary judgment decisions de novo, which means we

review the trial court's judgment independently and without deference to the trial court's determinations, using the same standard in our review that the trial court should have employed. *Ludwigsen v. Lakeside Plaza, L.L.C.*, 12th Dist. Madison No. CA2014-03-008, 2014-Ohio-5493, ¶ 8. Pursuant to Civ.R. 56(C), summary judgment is appropriate when (1) there is no genuine issue of any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence submitted can only lead reasonable minds to a conclusion which is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-70 (1998).

{¶ 14} In reviewing a contract, the court's primary role is to ascertain and give effect to the intent of the parties. *Baruk v. Heritage Club Homeowners' Assn.*, 12th Dist. Warren No. CA2013-09-086, 2014-Ohio-1585, ¶ 60. In ascertaining the intent of the parties, the court must presume that the intent resides in the language the parties chose to employ in the agreement. *Towne Dev. Grp., Ltd. v. Hutsenpiller Contrs.*, 12th Dist. Butler No. CA2012-09-081, 2013-Ohio-4326, ¶ 17.

{¶ 15} "A contract that is, by its terms, clear and unambiguous requires no interpretation or construction and will be given the effect called for by the plain language of the contract." *Cooper v. Chateau Estate Homes, L.L.C.*, 12th Dist. Warren No. CA2012-07-061, 2010-Ohio-5186, ¶ 12. A contract is ambiguous if its provisions are susceptible to two or more reasonable interpretations. *Id.* "[W]here there is doubt or ambiguity in the language of a contract it will be construed strictly against the party who prepared it. * * * In other words, he who speaks must speak plainly or the other party may explain to his own advantage." *McKay Mach. Co. v. Rodman*, 11 Ohio St.2d 77, 80 (1967). Whether a contract's terms are clear or ambiguous is a question of law for the court. *O'Bannon Meadows Homeowners Assn., Inc. v. O'Bannon Properties, L.L.C.*, 12th Dist. Clermont No. CA2012-10-073, 2013-Ohio-2395, ¶ 20.

{¶ 16} As previously noted, the six employees each signed an employment contract with Drone. In relevant part, the contract states:

> If, for any reason, the employee decides to vacate said temporary position, a two (2) week written notice is to be given to Drone Consultants LLC in order for Drone Consultants LLC to recruit and train a replacement employee for said position. The employee vacating the position agrees that he/she will not return to said position through any other contracting company.

{¶ 17} In construing the employment contract, it is relevant that the above-referenced citation has two clauses. The first clause provides that any employee who "decides to vacate" the temporary position must provide a two-week written notice "in order for [Drone] to recruit and train a replacement employee for said position." The second clause provides that the employee "vacating the position" agrees not to return to the same position through another contracting agency.

{¶ 18} Drone alleges the former employees breached both clauses of the employment contract. The trial court granted summary judgment in favor of the former employees after concluding that they did not "decide to vacate" their positions for purpose of triggering the clauses contained in the employment agreements.

{¶ 19} Based on our review of the record, we agree with the trial court's interpretation of the agreement and find judgment was appropriately granted in favor of the former employees. In the present case, Drone cannot present any evidence that the former employees "decide[d] to vacate" their temporary positions for purposes of triggering the responsibilities contained in the first clause of the employment agreement. The relevant facts are undisputed. Here, the former employees were continuously employed in the temporary positions with Procter & Gamble until the purchase order with Drone expired. Because Drone terminated the CPS Agreement with Volt, the corporate administrator positions were no longer available. Drone was well-aware that those positions were no

longer available, as it informed the former employees as such, and even informed them that they were eligible for unemployment compensation.

{¶ 20} On appeal, Drone argues that the trial court misinterpreted the language contained in the contract, and this court should construe the "Confidential Agreement" that the former employees signed with On-Line Design as "explicit evidence that they voluntarily chose to vacate their employment with" Drone. However, we decline to adopt Drone's position. The evidence here is undisputed that the former employees continued to work in the corporate administrator positions throughout the entirety of the purchase order. There is no provision contained in the former employees' employment contracts that would prohibit them from entering into another agreement with a new company or accept additional employment, i.e., "moonlighting." Simply, the former employees did not "decide to vacate" their positions; they were forced out.

{¶ 21} Because there is no genuine issue of material fact to support a claim that the former employees "decide[d] to vacate," the relevant provision requiring two weeks' notice was not applicable. As "at will" employees, the former employees were well within their rights to leave Drone's employ. This conclusion is further supported by the expressed purpose of the clause, which states that the two-week notice provision is required "in order for Drone Consultants LLC to recruit and train a replacement employee for said position." As Drone terminated its agreement with Volt and could not fill the corporate administrator positions at Procter & Gamble, Drone's position on this matter defies logic. The former employees did not "decide to vacate" their positions for purposes of triggering the responsibilities contained in the relevant clause.

{¶ 22} With respect to the second clause, which prohibits "the vacating employee" from "employment in the same position," we similarly find no breach. Drone alleges that the term "vacating employee" should be given a broad interpretation to prohibit a former

employee, in circumstances such as these, from accepting employment in the same position through another contracting company. However, in construing the relevant provisions and interpreting the contract between the parties, we are mindful who the terms should be considered within the context of the entire paragraph. As addressed above, the preceding sentence references obligations for an employee who "decides to vacate" a position. The next sentence, however, refers to only the term "vacating employee." "Often the intended meaning of a word or phrase may be clear when that word or phrase is considered in the context of other words or phrases in the contract." *EnQuip Techs. Grp. v. Tycon Technoglass*, 2d Dist. Greene No. 2011-CA-39, 2012-Ohio-6181, ¶ 16. Thus, the intended meaning of any part of the parties' contract should be determined in light of the whole contract. *Dayton Outpatient Ctr., Inc. v. OMRI of Pensacola, Inc.*, 2d Dist. Montgomery No. 26169, 2014-Ohio-4105, ¶ 13, citing *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361 (1997) (the court should read the contract as a whole and gather the intent of each part from the whole).

{¶ 23} In the present case, the term "vacating employee" follows and refers to the clause relating to an employee who has "decide[d] to vacate" a position. As noted above, the former employees did not "decide to vacate" their positions, but instead were no longer able to continue working in those positions due to Drone's termination of the CPS Agreement. Therefore, we disagree with Drone's position and find the relevant clause should not be provided such a broad interpretation as to prohibit the former employees from returning to their positions at Procter & Gamble. In so holding, we also reiterate the well-established principle that courts must construe ambiguous terms against the drafter. *Walter v. Agoston*, 12th Dist. Warren No. CA2003-03-039, 2004-Ohio-2488, ¶ 13; *Revocable Living Trust of Mandel v. Lake Erie Util. Co.*, 6th Dist. Ottawa No. OT-15-010, 2016-Ohio-1396, ¶ 11. If Drone intended the term "vacating employee" to encompass a broader term than spelled out

in the context of the employment contract, it could have included provisions to that effect. As a result, we disagree with Drone's position and find that the former employees did not breach the terms of their employment contract with Drone.

{¶ 24} In light of the foregoing, we find the trial court properly granted summary judgment in favor of the former employees in Drone's breach of contract action. Analyzing the plain and unambiguous language of the contract makes clear that the former employees did not "decide to vacate" the temporary positions, nor did they breach any term of the employment contract. Therefore, Drone's sole assignment of error is without merit and overruled.

{¶ 25} Cross-Assignment of Error No. 1:

{¶ 26} THE TRIAL COURT ERRED IN GRANTING DRONE CONSULTANT'S MOTION FOR SUMMARY JUDGMENT MOTION [sic] ON THE EMPLOYEES' CLAIM FOR DEFAMATION AND LIBEL.

{¶ 27} In their first cross-assignment of error, the former employees allege the trial court erred in granting summary judgment in favor of Drone in the respective counterclaims for defamation and libel.[1]

{¶ 28} Defamation is a false statement published by a defendant acting with the required degree of fault that injures a person's reputation, exposes the person to public hatred, contempt, ridicule, shame or disgrace, or adversely affects the person's profession. *Becker v. Internatl. Assn. of Firefighters Local 4207*, 12th Dist. Warren No. CA2010-03-029, 2010-Ohio-3467, ¶ 9. There are two forms of defamation, including libel or slander. The term slander refers to spoken defamatory words and libel refers to written defamatory words. *Woods v. Capital Univ.*, 10th Dist. Franklin No. 09AP-166, 2009-Ohio-5672, ¶ 27.

---

1. The counterclaim named both Drone, the company, and Barbara and Allan Drone, as individuals. For purposes of clarity, we will continue to use the term Drone to refer to both.

**{¶ 29}** Generally, the essential elements of a defamation action, whether slander or libel, are that "the defendant made a false statement, that the false statement was defamatory, that the false defamatory statement was published, that the plaintiff was injured and that the defendant acted with the required degree of fault." *Heidel v. Amburgy*, 12th Dist. Warren No. CA2002-09-092, 2003-Ohio-3073, ¶ 14.

**{¶ 30}** Defamatory statements may further fall under two categories: defamation per se and defamation per quod. *McWreath v. Cortland Bank*, 11th Dist. Trumbull No. 2010-T-0023, 2012-Ohio-3013, ¶ 42. Defamation per se occurs when a statement is defamatory on its face; defamation per quod occurs when a statement is defamatory through interpretation or innuendo. *Whiteside v. United Paramount Network*, 12th Dist. Madison No. CA2003-02-008, 2004-Ohio-800, ¶ 14. When a complaint alleges defamation per se, damages are presumed; when a complaint alleges defamation per quod, the complaint must allege special damages. *Williams v. Gannett Satellite Information Network, Inc.*, 1st Dist. Hamilton No. C-040635, 2005-Ohio-4141, at ¶ 7. "For a statement to constitute defamation per se, it must 'consist of words which import an indictable criminal offense involving moral turpitude or infamous punishment, impute[ ] some loathsome or contagious disease which excludes one from society or tend[ ] to injure one in his trade or occupation.'" *Whiteside v. Williams*, 12th Dist. Madison No. CA2006-06-021, 2007-Ohio-1100, ¶ 5, quoting *Heidel* at ¶ 30.

**{¶ 31}** In the present case, the former employees claim Drone's September 17, 2014 email constitutes defamation per se because the statements therein damage them in their trade or occupation. Because many of Drone's remaining employees who received that email work for Procter & Gamble, the former employees claim Drone's email "tended to degrade them in their position or profession." In pertinent part, the email stated:

> At the end of June, six of our employees left our company to go work for one of our competitors, On Line Design Inc. doing the exact same job which they did for us. Their departure was in

direct violation of our employment agreement, Section B, which states:

b) "If, for any reason, the employee decides to vacate said temporary position, a two (2) week written notice is to be given to Drone Consultants LLC in order for Drone Consultants to recruit and train a replacement employee for said position. The employee vacating the position agrees that he/she will not return to said position through any other contracting company."

They failed to provide us two week notice prior to their resignation of their employment with us and they further violated the Agreement by accepting employment in a position which they had while employed by us.

The Employment Agreement is a valid contract between Drone Consultants, LLC and the employees. These employees who violated our contract have been advised of this breach of contract and have been informed of the possible consequences.

Drone Consultants, LLC will do whatever it takes to enforce all of the provisions of our Employment Agreement and our attorney is currently engaged in conversations with their attorney regarding what these former employees will be required to pay us for their breach of contract.

**{¶ 32}** The trial court granted summary judgment in favor of Drone after concluding that there was no evidence that the email was defamatory or caused injury to the reputation of the former employees in their professional capacity.

**{¶ 33}** Based on our review of the record, we agree with the trial court and find summary judgment in this matter was appropriate. The email sent by Drone, although perhaps misleading and subject to interpretation does not rise to the level of actionable defamation. As to the first element for a defamation claim, Ohio courts "ha[ve] defined a false statement as a statement that sets forth matters which are not true or statements without grounds in truth or fact. A statement is not a 'false statement' if, even though it is misleading and fails to disclose all relevant facts, the statement has some truth in it. Moreover, a statement that is subject to different interpretations is not 'false.'" *Serv. Emp. Internatl. Union Dist. 1199 v. Ohio Elections Comm.*, 158 Ohio App.3d 769, 2004-Ohio-5662,

- 11 -

¶ 18 (10th Dist.).

{¶ 34} Here, Drone's email is a representation of the position that it has taken throughout this entire case. Namely, Drone claims that the former employees breached their employment agreement with the company and are liable for damages. Although Drone's breach of contract claims have proven unsuccessful, and the email did not disclose all relevant facts, the statements made are subject to multiple interpretations that do not rise to a claim for actionable defamation. Simply, the allegedly defamatory language contained in the email was a matter of contractual interpretation that was subject to reasonable dispute between the parties. Furthermore, we agree with the trial court that the former employees have not shown any evidence, beyond mere speculation, that their professional reputations were injured as a result of this email. As a result, we find the trial court did not err in granting summary judgment on the defamation claim. Therefore, we find the first cross-assignment of error is without merit and overruled.

{¶ 35} Cross-Assignment of Error No. 2:

{¶ 36} THE TRIAL COURT ERRED IN GRANTING DRONE CONSULTANT'S MOTION FOR SUMMARY JUDGMENT MOTION [sic] ON THE EMPLOYEES' CLAIM FOR UNLAWFUL RESTRAINT OF TRADE.

{¶ 37} In their second cross-assignment of error, the former employees allege the trial court erred by granting Drone summary judgment in the action for unlawful restraint of trade. We find no merit to this argument.

{¶ 38} To successfully establish an unfair competition claim based upon legal action, a party must show that the legal action is objectively baseless and that the opposing party had the subjective intent to injure the party's ability to be competitive. *Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St. 3d 366, 2012-Ohio-4193, ¶ 37.

{¶ 39} In the present case, we find Drone's legal action for breach of contract was not

"objectively baseless" for purposes of establishing the requirements for unfair competition. Although the trial court granted summary judgment in favor of the former employees in that action, a finding in favor of the opposing party does not mean that the action was necessarily "objectively baseless."  As discussed above, Drone brought this action based upon an alleged breach of contract involving the interpretation of the relevant employment contracts. Although unsuccessful, this court cannot find that the action was so unmeritorious as to warrant a finding of "objectively baseless."  As a result, this court need not decide whether the former employees could prove some subjective intent on behalf of Drone.  Therefore, the second cross-assignment of error is without merit and overruled.

{¶ 40} Judgment affirmed.

M. POWELL, P.J., and S. POWELL, J., concur.